# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# LAREDO DIVISION

| | |
|---|---|
| PARK AVENUE CONSTRUCTION, LTD., § | |
| § | |
| *Plaintiff,* § | |
| § | |
| vs. § | CIVIL ACTION NO. _____ |
| § | |
| AMERICAN ZURICH INSURANCE § | |
| COMPANY § | |
| § | |
| *Defendant.* § | |

## PARK AVENUE CONSTRUCTION, LTD.'S ORIGINAL COMPLAINT

TO THE HONORABLE COURT:

NOW COMES PARK AVENUE CONSTRUCTION, LTD., Plaintiff in the above-styled and referenced cause, and files its Original Complaint and shows the Court as follows:

### I.   THE PARTIES

1.   Plaintiff Park Avenue Construction, Ltd. ("Plaintiff" or "Park Avenue") is a Texas limited partnership with its principal place of business in Laredo, Webb County, Texas.

2.   Defendant American Zurich Insurance Company ("Defendant" or "Zurich") is an Illinois Corporation, whose principal place of business is in Schaumberg, Illinois, and is authorized to engage in the business of insurance in the State of Texas. Defendant may be served with process by serving its registered agent of service, Corporation Service Company at 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

## II.     JURISDICTION AND VENUE

3. Pursuant to 28 U.S.C. § 1332, this Court has jurisdiction to consider this matter because the suit is between citizens of different states and involves a dispute that results in an amount in controversy exceeding the sum of $75,000.00 exclusive of interests and costs.

4. Venue is proper in this Court because Plaintiff is the named insured under a builder's risk policy of insurance issued by Defendant in Texas for coverage on a construction project located in Laredo, Texas. At the time the policy was issued, Plaintiff had its headquarters and principal please of business in Laredo, Texas, and the policy in question was delivered to Plaintiff and enacted by the Plaintiff in Laredo, Texas. The Plaintiff's obligations under the insurance contract were performed in Laredo, Texas. A substantial part of the events and omissions giving rise to the claims occurred in Laredo, Texas and Zurich's activities at issue occurred concurrently in Texas that led to this action. Furthermore, Zurich has its registered agent for service of process registered with the Texas Department of Insurance as it does significant business in Texas. As a result, jurisdiction and venue for this declaratory judgment action is proper in this Court pursuant to 28 U.S.C. § 1332 and 28 U.S.C. §124(b)(3).

## III.     NATURE OF CONTROVERSY

5. The Plaintiff Park Avenue is a contractor that provides industrial construction services. Park Avenue attained from the Defendant Zurich Insurance a Builder's Risk Insurance Policy for the construction project described below. During construction, a Loss occurred for which Park Avenue submitted a claim pursuant to the policy. That claim has been improperly denied without any reasonable justification. In addition, in denying the claim, the Defendant has made misrepresentations with respect to the provisions of the Policy and with respect to coverage.

6. This lawsuit seeks a declaration pursuant to 28 U.S.C. §§ 2201 and 2202 interpreting the Builder's Risk Insurance Policy issued by Zurich and a finding that the Policy provides coverage for the losses suffered by the Plaintiff during the Policy Period, which have been denied by Zurich Insurance in writing. The Plaintiff is further seeking damages from Zurich Insurance for its: breach of the terms of the Insurance Policy; failure to act with good faith and fair dealing; and for violations of Insurance Code Section 541.0602. The Plaintiff is also seeking treble damages and reimbursement of attorney's fees incurred as a result of needing to file this lawsuit.

### IV.    THE POLICY

7. Park Avenue purchased from Zurich Insurance a Builder's Risk Policy with Policy Number EC-15298914-01 with an original policy period of December 11, 2019 to December 11, 2020. The Policy was renewed for a policy period of December 11, 2020 to December 11, 2021. Hereinafter this will be referred to as the "Policy."

8. The Policy was for builder's risk coverage on a new construction project of an office, warehouse and special warehouse known as the "Vintage Project" and located at Lots 3-4, Block 1, Vidal Cantu Road, in Laredo Texas (the "Project Site").

9. The Plaintiff paid the calculated premium, which provided coverage up to $10,335,557.00.

**THE LOSS**

10. On August 6, 2021, a portion of the retaining wall that was part of the Project collapsed after an unprecedented rainfall took place at the Project Site and the weight of the rain caused such collapse (the "Loss").

11. The Loss amount takes into consideration demolition and cleanup costs, materials remediation and replacement, and the cost to rebuild the wall in the approximate amount of $505,532.02.

## V.   COVERAGE

**A.** *The Policy Supports Coverage*:

12.   The Policy describes a covered cause of loss as: **"risk of direct physical loss or damage to Covered Property except those causes of loss listed in Section B. Exclusions**."[1]

13.   The Policy goes on to define "Covered Property" as the following[2]:

    **a.** All property, including but not limited to materials, supplies, machinery, equipment, fixtures and other property of similar nature, designated to be a permanent part or which has become a permanent part of the fabrication, erection, installation, alteration or completion of the project. These items are Covered Property whether the property is owned by you or is property of others for which you are responsible. Such property is covered from the time the property is at your risk and while:

        **(1)** At the "project site" described in the Declarations;
        **(2)** In transit; or
        **(3)** At any location on a temporary basis.

    **b.** Foundations, excavations and other underground property of buildings or structures in the course of construction at the "project site"; and

    **c.** Temporary structures, including office trailers, tool trailers, fencing, but not including construction forms and scaffolding, at the "project site".

14.   The retaining wall was designed and is designated a permanent part of the Project and therefore qualifies as covered property.

15.   Furthermore, the description of "property not covered" in the Policy does not apply to the Retaining Wall.[3]

16.   A covered cause of loss is further described as direct physical loss or damage to Covered Property unless otherwise excluded. None of the exclusions apply to the Loss at issue.

---

[1] *See* Exhibit A, Insurance Policy, "Builders Risk and Installation Coverage Form" § A(3), p. 1 of 10. (Emphasis added).
[2] *See* Exhibit A, the Insurance Policy, "Builders Risk and Installation Coverage Form," § A(1), p. 1 of 10.
[3] *See* Exhibit A, the Insurance Policy, "Builders Risk and Installation Coverage Form," § A(2), p. 1 of 10.

17. The initial denial letter sent by Defendant was based on exceptions including flood and earth movement.

18. The cause of damage was clearly not a flood, which requires the overflow of a body of water, and therefore the "flood" exception does not apply.

19. Moreover, even if the exception for earth movement resulting from flood and rain, snow, ice or sleet applied, that exception has a specific and applicable exception purposefully ignored by the Defendant, which directly follows in Section B.2.e. of the Policy: <u>*But we will pay for direct loss or damage to Covered Property due to collapse of a building or structure caused by weight of rain, snow, ice or sleet.*</u>[4] In this case, there was no earth movement until after the weight of the accumulation of rain caused the retaining wall to collapse.

20. As will be shown below, the weight of rain accumulation was directly responsible for the Loss, and therefore Zurich must pay pursuant to the contract.

21. Ultimately, in the last denial letter, the Defendant denied coverage claiming that the "recent outbreak of coronavirus/COVID-19" caused the Loss. This was confusing given that the Plaintiff never asserted Covid-19 was the cause of the Loss or a basis for coverage. This denial letter shows Zurich's bad faith.

B. *The Rimkus Report Supports Coverage*:

22. Rimkus Consulting Group, Inc. was retained by the Defendant to determine the cause of the reported damage to the retaining wall, and prepared a report dated December 29, 2021, which will be referred to as the "Rimkus Report."[5]

23. The Rimkus Reports finds that the Retaining Wall is a structure that suffered direct damage due to a "collapse" that was caused by the "weight of rain." The Rimkus Report expresses

---

[4] *See* Exhibit A, Insurance Policy, "Builders Risk and Installation Coverage Form" § 2(e), p. 6 of 10.
[5] *See* Exhibit B, the Rimkus Report.

a conclusion that the "load" (which is another word for weight) of the rain caused a collapse of the wall.[6]

24. The Rimkus Report also refers to the load as the triggering mechanism for the damage, as the rain "[collected] along the west side of the west wall."[7]

25. The report reasonably concludes that once the construction was completed, the risk of such a load causing similar damage would have been eliminated as the "west wall would act as a beam between those pavements."[8]

26. A proper application of this language to the terms of the Policy must conclude that there is coverage given that *but for* the weight of the rain, the collapse *in question* of covered property would not have occurred.

27. The heightened risk of damage during the construction phase is a primary reason for purchasing builder's risk insurance coverage.

28. The Rimkus Report further serves to contravene any argument for a denial relying on a "defective work" exclusion based on the change of the design of the retaining wall, when it concludes that once finished, the retaining wall would have been able to support the weight of the water.[9] The Rimkus Report does not find that the design was defective.

29. Moreover, even if the Rimkus Report had found the design change to have rendered the design defective, coverage would be required pursuant to the exception to the defective work exclusion found in the Policy, which states:

Section B.3.: *But if an excluded cause of loss that is listed in 3.a through 3.d below results in a Covered Cause of Loss, we will pay*

---

[6] *See* Exhibit B, the Rimkus Report, Section II – Conclusions, p. 2.
[7] *See* Exhibit B, the Rimkus Report, p. 9.
[8] *See* Exhibit B, the Rimkus Report, p. 8.
[9] *See* Exhibit B, the Rimkus Report, Section II – Conclusions, p. 2.

6

>> *for the loss or damage caused by that Covered Cause of Loss*:
>
> Section B.3.c. *Faulty, inadequate or defective*:
>
>>> (2) *Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction…*

30. The alleged improper deviation from the original plans still resulted *in damage caused by a Covered Cause of Loss* in the form of a "*collapse of a building or structure caused by weight of rain*."[10] As such, A finding of alleged faulty, inadequate or defective design and/or construction would ultimately still require coverage by the Defendant.

## VI.    DENIAL OF COVERAGE

31. Park Avenue formally presented a claim to Zurich Insurance for damages stemming from the collapse of a retaining wall on August 6, 2021 (the "Claim").

32. In its initial denial letter, dated September 20, 2021, Zurich Insurance relies on damages stemming from the exclusions based on "earth movement" and "flood" based on a visual inspection by its representative that "confirmed damages to the retaining wall were due to the thunderstorms and 6 inches of rainfall resulting in soil saturation of adjacent west side property" ultimately concluding that the "damage at the loss location was caused by mudslide and Earth movement.[11]"

33. Park Avenue responded pointing out that neither cited exclusion applies to the facts at issue. Regarding the exclusion for damage caused by "floods", Texas courts define a flood as water which has overflowed a river, stream, or natural water course having formed a continuous body with the water flowing in the ordinary channel, which does not exist near the Project Site.

---

[10] *See* Exhibit A, the Insurance Policy, "Builders Risk and Installation Coverage Form," "Exclusions," § B(2)(e), p. 6 of 10.
[11] *See* Exhibit C, Zurich's Letter dated September 20, 2021.

34. The Plaintiff further pointed out that the collapse of the wall was not a result of the "earth movement", but that instead it is self-evident that the movement of the earth resulted *from the collapse.* The Rimkus Report supports this finding.

35. Zurich Insurance followed up with an "Revised Denial Letter" dated January 12, 2022, after having enlisted Rimkus Consulting Group Inc. to perform an onsite inspection.[12]

36. Ultimately, the revised denial was based on: (1) a failure to adequately brace the under-construction wall to resist conditions that caused the wall to respond to imposed loads in a way different than what had been intended per the design of the wall"; (2) the west wall being constructed "with a thickness that was less than the design thickness, resulting in lower bending strength that would have been achieved with the thicker designed walls; and (3) the reported rainfall at the site on August 6, 2021, provided the triggering mechanism for the reported failure of the west wall on that date.

37. Zurich then relied again on the exclusions resulting from earth movement, flood, and "rain, snow, ice or sleet".[13]

38. The Defendant further relied on the exclusion for "faulty, inadequate or defective" work based on the thickness of the wall having changed from that originally designed.[14]

39. As Plaintiff has already explained above, Zurich's denial is unfounded and in bad faith because the terms of the Policy expressly require coverage in this instance. In response to further clarification by the Plaintiff as to coverage, Zurich again denied the claim.

40. On March 24, 2022, Zurich again denied the claim, this time denying the claim by stating:

---

[12] *See* Exhibit D, Zurich's Revised Denial Letter dated January 12, 2022.
[13] *See* Exhibit C, Zurich's Letter dated September 20, 2021, Section B. Exclusions at p. 2.
[14] *Id.*

8

> *"We are writing on behalf of American Zurich Insurance Company in response to your February 22, 2022, letter concerning the insurance claim Park Avenue Construction, LTD. presented in connection with the recent outbreak of coronavirus/COVID-19. American Zurich Insurance Company has reviewed your letter and has concluded that, based on the facts of the claim, as well as the terms and conditions of the Policy, coverage is not available for the claim presented by Park Avenue Construction Ltd."*[15]

41. After request for confirmation in April of 2022 that pointed out it did not address the substance of Plaintiff's argument for coverage, Zurich confirmed the denied the claim based upon the application of COVID-19.

### VII. CAUSES OF ACTION

#### A. *Request for Declaratory Judgment*

42. The Plaintiff incorporates paragraphs 7 through 41 as set forth fully herein. Pursuant to 28 U.S.C. §§ 2201 and 2202, and based on the above referenced facts, Park Avenue seeks a declaration from this Court that the Defendant is obligated pursuant to the terms of the Policy to provide coverage to Park Avenue for its Claim.

43. The Plaintiff is a party interested under a written contract entitled to relief from uncertainty with respect to its rights and status.

44. Zurich Insurance has taken a position that directly contradicts its obligations as stated in the Insurance Policy, having cited exceptions to coverage that do not apply to the facts of the Loss that occurred as shown above.

45. For these reasons, Park Avenue seeks a declaration from the Court finding that (i) the Loss qualifies as a collapse of a structure caused by the weight of rain; (ii) none of the exclusions apply to the facts of this case; and that (iii) Zurich Insurance was required to provide

---

[15] *See* Exhibit E, Zurich's Response Letter dated March 24, 2022.

coverage pursuant to the terms of the Policy and failed to do so (iv) there was no legal or factual foundation for the denial of the claim by Zurich.

### B.   *Breach of Contract*

46.   The Plaintiff incorporates paragraphs 7 through 41 as if set forth fully herein.

47.   Park Avenue and Zurich Insurance entered into a binding contract in the form of the builder's risk Insurance Policy, which contained an obligation by Zurich Insurance to insure the Plaintiff against damages stemming from property damage such as the damage at issue in this case, the Loss.

48.   Zurich Insurance has breached its obligations by failing to provide said coverage against the Loss, and instead denying a claim for the Loss covered by the Contract.

49.   This denial has caused damages to the Plaintiff in the form the costs of demolishing and cleaning up the damaged retaining wall and remediation and replacement of related and associated materials, the increase in cost of demolishing and cleaning up the damaged retaining wall and rebuilding same due to increases in cost over time and all other delay costs caused by the denial, which amounts are above the minimum jurisdiction of the Court.

### C.   *Breach of Duty to Act with Good Faith and Faith Dealing*

50.   The Plaintiff incorporates paragraphs 7 through 41 as set forth fully herein. At common law, Texas has established that an insurance company owes a duty of good faith and fair dealing to its insured in its handling and processing of insurance claims presented.

51.   Zurich Insurance violated this duty when it unreasonably denied Park Avenue's claim without justification given the facts clearly resulting in a requirement to provide coverage. Even after the clear basis for coverage was pointed out to Zurich Insurance, it continued to deny coverage and further failed to meet its obligations by citing irrelevant provisions of the policy and

unrelated issues, such as COVID 19, for the denial, which failed to address Plaintiff's claims. These actions represent the Defendant's promotion of its own interests ahead of Park Avenue's as the insured.

52. This denial has damaged the Plaintiff in the form of the cost of demolishing and cleaning up the damaged retaining wall and associated materials and rebuilding same, and all delay costs caused by the denial, including the increase in costs over time, which amounts are above the minimum jurisdiction of the Court.

### D. *Violations of Sections 541.060 and 541.061 of the Texas Insurance Code*

53. The Plaintiff incorporates paragraphs 7 through 41 as set forth fully herein. Zurich Insurance has engaged in unfair settlement practices by misrepresenting to Park Avenue a material fact relating to the coverage issue and by continuing to insist on same even after the lack of foundation was pointed out to Zurich.

54. Specifically, Zurich denied the claim even after Park Avenue had pointed out the facts of the case and the provisions of the insurance policy that clearly established coverage. Even worse, Zurich knowingly continued to deny the claim based on "the outbreak of COVID 19."[16]

55. The basis for coverage was clearly presented to Zurich by Park Avenue. Park Avenue did not present a claim in connection with the Covid-19 outbreak and reminded Defendant of same prior to the confirmation of denial. Consequently, the denial of coverage after it was clearly identified and to deny coverage based on COVID 10 is to be in direct and knowing violation of Section 541.060 and shows a lack of good faith negotiations regarding the settlement negotiations for the Loss and was a clear misrepresentation of the material facts presented.

---

[16] *See* Exhibit E, Zurich's Response Letter dated March 24, 2022.

56. Furthermore, Zurich failed to attempt in good faith to effectuate a prompt, fair and equitable settlement despite the clear evidence, before and after the Rimkus Report, that the Loss was covered under the terms of the Policy.

57. This denial has damaged the Plaintiff in the form of the cost of demolishing and cleaning up the damaged retaining wall and remediation and replacement of associated materials and rebuilding same, and all delay costs caused by the denial, including the increases in costs, which amounts are above the minimum jurisdiction of the Court. The Plaintiff is further entitled to three times its damages due to Zurich making knowing misrepresentations and refusing to provide coverage even when the lack of foundation was pointed out to Zurich.

### VIII.   CONDITIONS PRECEDENT

58. The Plaintiff affirmatively pleads that it has complied with and satisfied all conditions precedent prior to bringing this suit. FED. R. CIV. P. 9.

### IX.   ATTORNEY'S FEES AND COSTS

59. Plaintiff incorporates the factual recitations in paragraphs 5 through 56 hereof as if fully set forth at length.

60. Plaintiff seeks recovery of its actual and necessary costs and expenses, including attorney's fees, as may be permitted pursuant to 28 U.S.C. §2202, §37.009 of the TEX. CIV. PRAC. & REM. CODE, AND §38.001 of the TEX. CIV. PRAC. & REM CODE and pursuant to Sections 541.060 and 541.061 of the Texas Insurance Code.

### X.   PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff PARK AVENUE CONSTRUCTION, LTD., prays that Defendant ZURICH AMERICAN INSURANCE

COMPANY be cited to appear and answer herein, and that after consideration of this matter, either through trial or dispositive motion, that this Court:

a. Declare pursuant to 28 U.S.C. §§ 2201 that Defendant is obligated under the terms of the Builder's Risk Policy Number EC-15298914-01 to provide coverage to Plaintiff on its Claim for the Loss described herein;

b. Declare that Defendant was obligated to provide coverage for the Loss and failed to do so;

c. Declare that there was no legal or factual foundation for the denial of the claim of the Loss;

d. award Plaintiff its reasonable and necessary costs, expenses and attorney's fees in connection with its Declaratory Judgment Action and for the prosecution of its breach of Texas Insurance Code and breach of contract against Defendant;

e. order that the Defendant is enjoined from denying the Plaintiff's claim for coverage related to the Loss;

f. award Plaintiff treble damages according to Section 541.152 of the Texas Insurance Code based on Zurich engaging in knowing violations of Section 541.060 of the Texas Insurance Code; and

g. find that Plaintiff receive all other relief, general or special, at law or in equity, to which it may show itself entitled to receive.

Dated: **May 22, 2023**:

        Respectfully submitted,

        VALLS & MARROQUIN LLP
        6557 Metro Court, Suite 2
        Laredo, Texas 78041
        (956) 602-0699 (Tel)
        (956) 602-0715 (Fax)

By:   */s/ Kenneth A. Valls*
       Kenneth A. Valls
       Email: kvalls@vallslaw.com
       State Bar No. 20435615
       Federal ID No. 13056

       ***Counsel for Plaintiff Park Avenue Construction, Ltd.***